USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: 1/29/20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
MICK ROCK,

       Plaintiff,

  -against-

ENFANTS RICHES DEPRIMES, LLC, BARNEYS
NEW YORK, INC., and THE REAL REAL, INC.,

       Defendants.
------------------------------------------------------------------ x

17-cv-2618 (ALC)

**OPINION & ORDER**

**ANDREW L. CARTER, JR., District Judge:**

  Defendants Enfants Riches Deprimes, LLC and Barneys New York, Inc. (collectively, "Defendants") filed a motion for attorneys' fees and costs pursuant to 17 U.S.C. § 505 and Federal Rules of Civil Procedure 54(d)(2), and for sanctions against Plaintiff's counsel, Richard Liebowitz ("Mr. Liebowitz") and Liebowitz Law Firm PLLC pursuant to 28 U.S.C. § 1927 and the Court's inherent powers. For the reasons set forth below, Defendants are **GRANTED** $100,008.13 in attorneys' fees and costs, Mr. Liebowitz and the Liebowitz Law Firm PLLC are **SANCTIONED** in the amount of $10,000, and Defendants' request for costs and fees associated with the instant motion and reply is **DENIED**.

## BACKGROUND

  Plaintiff Mick Rock (hereinafter, "Plaintiff" or "Mr. Rock") commenced this action on April 11, 2017 against Defendants for violations of the Copyright Act, 17 U.S.C. §101 et seq. ECF No. 1 ("Compl."). Mr. Rock alleged that he was the creator and rightful owner of a photograph of musician Lou Reed ("the Photograph") and that this Photograph was used on articles of clothing created and sold by Defendants without license. Compl. ¶¶ 12–17. Defendants, on the other hand, disputed Mr. Rock's ownership, citing the lack of evidence in the record indicating his registration

of the Photograph. Opinion & Order (ECF No. 60) at 5. Plaintiff produced no evidence that the Photograph was registered or that a proper application was made out and refused by the Register. *Id.* The only registration referenced by Plaintiff was for the work "Mick Rock Exposed," ("990 Registration") a book which included the Photograph. *Id.* However, the registration for this book explicitly excluded "previously published works," and Plaintiff and Defendants agree that the Photograph had been previously published numerous times dating back to the 1970s. *Id.* Nevertheless, Plaintiff filed a Complaint alleging that the Photograph was registered by the "Mick Rock Exposed" 990 Registration. *Id.*

After discovery was completed, Defendants filed a motion for summary judgment on August 8, 2018. ECF Nos. 46–49. Plaintiff filed an opposition on September 7, 2018. ECF No. 55. Defendants filed a reply on September 21, 2018. ECF No 56. This Court granted Defendants' motion for summary judgment on March 21, 2019 because Plaintiff did not establish that the Photograph was registered or that a proper application was made out and refused by the Register. ECF No. 60. On April 4, 2019, Defendants filed the instant motion for attorneys' fees, costs, and sanctions. ECF No. 63–65. Plaintiff filed an opposition on May 2, 2019. ECF No. 69. Defendants filed a reply on May 9, 2019. ECF No. 70.

## DISCUSSION

### I. Attorneys' Fees and Costs

Defendants request an award of attorneys' fees and costs pursuant to 17 U.S.C. § 505 and Federal Rule of Civil Procedure 54(d)(2). Section 505 of the Copyright Act provides that a district court "may . . . award a reasonable attorneys' fee to the prevailing party." 17 U.S.C. § 505. Fee awards under this section "should encourage the types of lawsuits that promote" the purposes of the Copyright Act, which include "encouraging and rewarding authors' creations while also

enabling others to build on that work." *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1986 (2016). Courts should give "substantial weight" to "the objective (un)reasonableness of [the] losing party's litigating position," *id*, and should also consider "frivolousness, motivation, . . . and the need in particular circumstances to advance considerations of compensation and deterrence." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534, n. 19 (1994).

An essential element of a claim under the Copyright Act is the registration of the alleged material. Here, Plaintiff did not hold a valid registration for the Photograph. Plaintiff and his counsel knew, or should have known, that the Photograph was not registered through the work "Mick Rock Exposed," because the book's registration explicitly excluded "previously published works," and Plaintiff admitted in deposition (and in other documents turned over in discovery) that the Photograph was previously published on numerous occasions. *See* Opinion & Order at 5. Moreover, even if Plaintiff and his counsel were unaware that the "Mick Rock Exposed" Registration did not register the Photograph, Plaintiff's counsel had the responsibility under Federal Rules of Civil Procedure 11(b)(3) to ensure that the factual contentions in the Complaint had evidentiary support. Finally, discovery and Defendants' pre-motion letter made clear that the Photograph was not registered. Nevertheless, Plaintiff stonewalled discovery requests for relevant documents pertaining to the 990 Registration, and then claimed (with no evidence) that the 990 Registration "mistakenly" excluded the Photograph despite the record clearly indicating otherwise. *See* Defendants' Memorandum of Law in Support of Motion for Attorneys' Fees and Sanctions (ECF No. 64) at 7–8 (hereinafter, "Def. Memo").[1]

---

[1] Plaintiff argues that the Claims were objectively reasonable and raised "unsettled, novel, and complex issues of copyright law." Pl. Memo at 8. This is incorrect. Plaintiff asserts that there was a novel question as to whether the 990 Registration "could qualify the Photograph for protection under Section 411(a) of the Copyright Act." *Id.* at 10. While Plaintiff did advance this argument in his summary judgment briefing, this Court swiftly rejected it because it misinterprets a fundamental aspect of copyright claims: the work in question must be registered, and the 990 Registration explicitly excluded the Photograph from registration.

3

Plaintiff argues that Defendants are not the "prevailing party" since the Court dismissed Plaintiff's claim without prejudice. *See* Plaintiff's Memorandum of Law in Opposition to Defendants' Motion (ECF No. 69) at 4–6 (hereinafter, "Pl. Memo"). "The 'touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties.'" *CRST Van Expedited, Inc. v. E.E.O.C.*, 136 S. Ct. 1642, 1646 (2016). "[A] defendant need not obtain a favorable judgment on the merits in order to be a 'prevailing party.'" *Id.* at 1651. Instead, a defendant has "fulfilled its primary objective whenever the plaintiff's challenge is rebuffed, irrespective of the precise reason for the court's decision." *Id.* In this case, although the claims were dismissed without prejudice, the legal relationship between the parties was materially altered. After Defendants' summary judgment motion was granted, Plaintiff cannot bring copyright claims against Defendant unless and until the Photograph is registered. This difference is not merely procedural—instead, it "actually accomplishes something substantive for the winning party." *Preservation Coalition of Erie County v. Federal Transit Administration*, 356 F.3d 444, 451 (2d Cir. 2004) (citation omitted).[2]

This Court finds that Plaintiff advanced objectively unreasonable and frivolous arguments in this case and that this litigation did not "enrich[] the general public through access to creative works." *Fogerty*, 510 U.S. at 527. Moreover, Plaintiff's litigation strategy made consideration and disposition of this case more difficult for this Court. Given this litigation strategy pursued by Plaintiff, the need for deterrence also weighs in favor of awarding attorneys' fees.

II. **Sanctions**

---

[2] Moreover, as discussed below, the claim was largely meritless, which is a factor in deeming the Defendants the "prevailing party" even though the case was dismissed without prejudice. *See CRST Van Expedited, Inc. v. E.E.O.C.*, 136 S. Ct. 1642, 1652 (2016) ("Congress must have intended that a defendant could recover fees expended in frivolous, unreasonable, or groundless litigation when the case is resolved in the defendant's favor, whether on the merits or not.").

## A. Sanctions Under § 1927 and the Court's Inherent Power

Defendants also ask the Court to sanction Plaintiff's counsel pursuant to 28 U.S.C. § 1927 and under the Court's inherent power. Under §1927, any attorney who "so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. These sanctions should only be imposed "when there is a finding of conduct constituting or akin to bad faith." *Sakon v. Andreo*, 119 F.3d 109, 114 (2d Cir. 1997). Similarly, awarding sanctions under the Court's inherent power requires finding that the offending party "acted in bad faith, vexatiously, wantonly or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991). To succeed on a motion for sanctions under either §1927 or the Court's inherent powers, the movant must demonstrate "clear evidence that (1) the offending party's claims were entirely meritless and (2) the party acted for improper purposes." *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71, 79 (2d Cir. 2000) (quoting *Agee v. Paramount Commc'ns Inc.*, 114 F.3d 395, 398 (2d Cir. 1997)). Any finding of bad faith "must be supported by a high degree of specificity in the [court's] factual findings." *Enmon v. Prospect Capital Corp.*, 675 F.2d 138 (2012) (citation and quotation marks omitted).

Mr. Liebowitz is notorious in this District for his litigation strategy.[3] As one judge recently noted, "it is no exaggeration to say that there is a growing body of law in this District devoted to

---

[3] *See, e.g., Pereira v. 3072541 Canada Inc.*, 17-CV-6945, 2018 WL 5999636, at *3 (S.D.N.Y. Nov. 15, 2018) ("The Court finds particularly concerning Mr. Liebowitz's repeated failures to follow the orders and rules of this Court and others within the district, as well as his propensity to take unreasonable positions and to omit crucial facts -- or even to make outright misrepresentations -- in an apparent attempt to increase costs and extort unwarranted settlements."); *McDermott v. Monday Monday, LLC*, 17-CV-9230, 2018 WL 1033240, at *3 (S.D.N.Y. Feb. 22, 2018) (labeling Mr. Liebowitz "a known copyright 'troll'"); *Polaris Images Corp. v. Cable News Network, Inc.*, 365 F. Supp. 3d 340, 342 (S.D.N.Y. 2019) ("The Court notes, however, as have others in this District, that Polaris's counsel, Mr. Richard Liebowitz of the Liebowitz Law Firm, PLLC, is a repeat player as plaintiff's counsel in hundreds of copyright actions and that counsel's practices in some of those cases have raised concerns that test the limits of the Court's presumption of good faith."); *Steeger v. JMS Cleaning Servs.*, LLC, 17-CV-8013, 2018 WL 1363497, at *2 (S.D.N.Y. Mar. 15, 2018) ("It is troubling that the motion for reconsideration continues the pattern of omissions and misrepresentations that has plagued Mr. Liebowitz's earlier submissions in this action.").

the question of whether and when to impose sanctions on Mr. Liebowitz alone." *Rice v. NBCUniversal Media, LLC*, No. 19-CV-447, 2019 WL 3000808, at *1 (S.D.N.Y. July 10, 2019). For the reasons stated below, this Court joins several others in this District in imposing sanctions on Mr. Liebowitz for his conduct.[4]

Mr. Liebowitz had the responsibility to ensure that the Photograph was registered before filing the Complaint. *See* Federal Rules of Civil Procedure 11(b)(3). Compounding this is the fact that, when faced with the prospect of the Defendants learning that the Photograph was not registered, Mr. Liebowitz actively stonewalled discovery requests. For example, Mr. Liebowitz failed to comply with Magistrate Judge Freeman's Order to obtain and produce Copyright Office documents regarding the 990 Registration and failed to respond to multiple requests from the Defendants for these documents. *See* ECF No. 31. This led counsel for Defendants to have to separately request and obtain the 990 Registration documents at their own expense. *See* Def. Memo at 7.[5] Courts may impose sanctions for misconduct during discovery, including for harassment, delay, or other instances of bad faith. *See Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 101 (2d Cir. 2002).

After it became apparent that the Photograph was not registered, Mr. Liebowitz then argued that the 990 Registration had "mistakenly" excluded the Photograph. Not only did Mr. Liebowitz provide no evidentiary support for this argument, it is also plainly contradicted by the record. *See* Opinion & Order at 5-6 ("Plaintiff failed to produce any evidence indicating a proper registration for the Photograph or a proper application resulting in a refusal by the Register, both of which

---

[4] *See, e.g., Rice*, 2019 WL 3000808 (imposing sanctions for Mr. Liebowtiz's failure to comply with court orders); *Craig v. UMG Recordings, Inc.*, 380 F. Supp. 3d 324, 328 (S.D.N.Y. 2019) (imposing sanctions for Mr. Liebowtiz's filing a meritless motion); *Steeger*, 2018 WL 1363497 (imposing sanctions for Mr. Liebowtiz's failure material omissions, mischaracterizations, and failure to comply with court orders).

[5] Mr. Liebowitz has also previously been sanctioned for "failure to produce copyright application-related materials during discovery." *Ferdman v. CBS Interactive Inc.*, 342 F. Supp. 3d 515, 528 (S.D.N.Y. 2018); *see also Romanowicz v. Alister & Paine, Inc.*, No. 17-CV-8937, 2018 WL 4762980, at *2 (S.D.N.Y. Aug. 3, 2018).

operate as prerequisites to filing a claim under the Act."). Mr. Liebowitz also argued that the 990 Registration for the Photograph "would have" been rejected. Again, he provided no evidentiary support for this argument, and it too is plainly contradicted by the record. Opinion & Order at 5 n.3.[6]

This conduct—of failing to investigate the evidentiary basis for a Complaint, of stonewalling discovery, of misleading the Court, and of making meritless arguments—undoubtedly demonstrates bad faith. *See In re 60 E. 80th St. Equities, Inc.*, 218 F.3d 109, 116 (2d Cir. 2000) ("[B]ad faith may be inferred where the action is completely without merit."). Accordingly, the Court finds Mr. Liebowitz's conduct in this case sanctionable under both § 1927 and the Court's inherent powers.

B. **Nature and Amount of Sanctions**

The two questions that remain are whether to sanction Mr. Liebowitz's law firm and the amount of sanctions. "Because Liebowitz's 'actions were indistinguishable from those of [the Liebowitz Law Firm PLLC] as a firm,' the Court [imposes sanctions] against both Liebowitz and the Liebowitz Firm PLLC, jointly and severally." *Craig*, 2019 WL 1432929, at *10 (citation omitted) (quoting *Enmon v. Prospect Capital Corp.*, 675 F.3d 138, 148 (2d Cir. 2012)). Next, as to the amount of sanctions, the Court has the authority to hold Mr. Liebowitz jointly and severally liable to satisfy the attorneys' fees award in this case. However, "sanctions should not be more

---

[6] The Court pauses to note that this is not the first time Mr. Liebowitz has made misrepresentations and omissions regarding the status of the registration of a copyright, *see, e.g., Rudkowski v. MIC Network, Inc.*, No. 17 CIV. 3647 (DAB), 2018 WL 1801307, at *3 n.3 (S.D.N.Y. Mar. 23, 2018) ("Mr. Liebowitz also misrepresented in this case that the Video's copyright was already registered in the Complaint while knowing that the application had merely been filed."); nor the first time he has made misrepresentations and omission in moving papers, *see, e.g., Craig v. UMG Recordings, Inc.*, 380 F. Supp. 3d 324, 339 (S.D.N.Y. 2019) ("Liebowitz's bad faith is most evidence in the omission of the details of the alleged conversation in the moving papers. Those details were fatal to Craig's motion, and obviously so under a basic understanding of the applicable law.").

severe than reasonably necessary to deter repetition of the conduct by the offending person . . . ." *Weiss v. Weiss*, 984 F. Supp. 682, 686 (S.D.N.Y. 1997) (internal quotation marks omitted).

District courts have the authority to not award the entire lodestar amount of attorneys' fees as sanction. *See Eastway Const. Corp. v. City of New York*, 821 F.2d 121, 122 (2d Cir. 1987) ("[T]he course of the law concerning use of attorney's fees as one of an array of sanctions against frivolous litigation has recognized that a lodestar amount need not be routinely awarded."). In this case, joint and several liability for the attorneys' fees could be excessive if Mr. Liebowitz and his firm are held liable for the entire amount of attorneys' fees, or under-inclusive if the Plaintiff himself satisfies the award of attorneys' fees. Instead, a sanction of $10,000 is more tailored to "serve the sanctioning purpose" in this case. *Eastway Const. Corp.*, 821 F.2d at 123. Accordingly, Mr. Liebowitz and his law firm must collectively pay $10,000 of the reasonable attorneys' fees calculated below. *See* 28 U.S.C. § 1927 ("Any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.").

III. **Amount of Attorneys' Fees and Costs**

Defendants seek $4,181.82 in costs, $160,038.50 in attorneys' fees, and $20,000 to $30,000 for additional costs and fees associated with the instant motion. *See* Def. Memo at 21. For the reasons discussed below, applying a 25% reduction in hours billed by Defense counsel and reduced hourly rates, Defendants are entitled to $95,826.31 in attorneys' fees and $4,181.82 in costs. Defendants are not, however, entitled to costs and fees associated with the instant motion.

When analyzing a request for attorneys' fees, a court must determine the "lodestar" amount, which is "the product of a reasonable hourly rate and the reasonable number of hours required by the case," also known as the "presumptively reasonable fee" in the Second Circuit.

*Millea v. Metro-N. R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (citing *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany Cty. Bd. of Elections*, 522 F.3d 182, 183 (2d Cir. 2008)). The court determines the "reasonable hourly rate" by considering case-specific variables such as the complexity of the case, the amount of work required, the attorney's expertise, and awards in similar cases, among other factors. *Arbor Hill*, 522 F.3d at 190. With respect to the reasonableness of the hours expended, the court "looks to its own familiarity with the case and its experience with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties." *Alexander v. Amchem Prod., Inc.*, 07-CV-6441, 2008 WL 1700157, at *3 (S.D.N.Y. Apr. 3, 2008) (quoting *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992)) (internal quotation marks omitted). "[T]rial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Fox v. Vice*, 563 U.S. 826, 838 (2011).

### A. Reasonableness of Hourly Rates

Plaintiff contests the reasonableness of the hourly rates for all four attorneys on this matter: Barry I. Slotnick ($913.01/hr); Debbie White ($740/hr); C. Linna Chen ($750.62); and Sarah Levitan Perry ($613.44). After a careful review of the record submitted by Defendants and the factors laid out in *Arbor Hill*, 522 F.3d at 190, the Court believes the following adjustments are appropriate.

Last year, in another case filed by Mr. Liebowitz in this District, the court considered the hourly rates of Barry Slotnick, C. Linna Chen, and paralegal Antoinette Pepper. *See Craig v. UMG Recordings, Inc.*, 380 F. Supp. 3d 324, 339 (S.D.N.Y. 2019). There, the Court noted that, given Barry Slotnick's over forty years' experience and his position as a partner and chair of the

Intellectual Property and Entertainment Litigation Practice Group at Loeb & Loeb LLP, an hourly rate of $828 is reasonable. *Id.* at *5. Similarly, and for substantially the same reasons, this Court finds that an hourly rate of $913.01 is reasonable for Mr. Slotnick. Debbie White is also a nationally recognized partner, is the deputy chair of the Music Industry practice at Loeb & Loeb LLP, and has more than twenty years of experience litigating copyright issues. While she billed less than four hours in this case, the Court finds that her hourly rate of $740 is reasonable.

The *Craig* court reduced the hourly rate for C. Linna Chen to $550. *Id.* Given Ms. Chen's experience as a senior litigation associate, her experience handling a broad array of litigation concerning copyright and other intellectual property, and the complexities of discovery and litigation in this case, the Court determines that an hourly rate of $575 is reasonable for Ms. Chen. Sarah Perry is a litigation associate who has over five years of experience and has handled copyright and trademark infringement cases previously. Consistent with other courts, the Court finds that an hourly rate of $400 is reasonable for an associate with her experience. *See, e.g., H.B. Automotive Group, Inc. v. Kia Motors America, Inc.*, No. 13-CV-4441, 2018 WL 4017698, at *6, *8 (S.D.N.Y. July 25, 2018).

Although Plaintiff does not object to Defendants' proposed rates for paralegals and other staff, the Court now considers the reasonableness of these rates as well. Defendants provide the following hourly rates: Antoinette Pepper (paralegal) ($419.79/hr); Geri Papa (paralegal) ($425/hr); Roxane McRae (paralegal) ($235/hr); Timothy Cummins (paralegal) ($380/hr); Lawrence Mehringer (law clerk) ($390/hr); Christian Perez (paralegal) ($275/hr); Shireen Kuman (research librarian) ($325/hr); and Josh Gorruso (Director of Litigation Support) ($391.56/hr). These rates exceed the reasonable hourly cost for similarly situated professionals in this District. As the court in *Craig* noted in regard to Ms. Pepper, "[r]ecent cases in this district suggest that the

prevailing rate for paralegals is between $100 and $200 per hour." *Craig*, 2019 WL 2992043 at *5 (citations omitted). Accordingly, the Court finds that, based on their respective years of experience, and the complexities of discovery and motion practice in this case, $200 per hour is reasonable for Antoinette Pepper, Geri Papa, and Timothy Cummins; and that an hourly rate of $150 per hour is reasonable for Roxane McRae and Christian Perez. With respect to the research librarian, law clerk, and Director of Litigation Support, the Court finds it appropriate to award fees in the high-end range of what is reasonable for paralegals and thus finds a rate of $200 per hour reasonable for Shireen Kuman, Josh Gorruso, and Lawrence Mehringer—particularly given the extended discovery and complexities of this case.

B. **Hours Expended**

Next, the Court turns to the reasonableness of the number of hours expended by Defendants. The Court must "examine[] the particular hours expended by counsel with a view to the value of the work product of the specific expenditures to the client's case." *Luciano v. Olsten Corp.*, 109 F.3d 111, 116 (2d Cir. 1997) (citations omitted). District courts may make across-the-board percentage cuts in hours instead of engaging in an item-by-item approach. *See, e.g., Matusick v. Erie County Water Authority*, 757 F.3d 31 (2d Cir. 2014) (upholding 50% across-the-board reduction); *Francois v. Mazer*, 523 Fed.Appx. 28, 29 (2013) (upholding 40% across-the-board reduction). The most critical factor in a district court's determination of what constitutes reasonable attorneys' fees "is the degree of success obtained." *Farrar v. Hobby*, 506 U.S. 201, 114 (1992).

Plaintiff argues that "the Court should apply a 85% reduction to the number of hours expended because they are grossly inflated for an AM 100 law firm seeking to gauge its corporate client and insurance company." Pl. Memo at 20. Plaintiff provides no specific objections to time

billed by defense counsel. In this case, defense counsel was required to engage in contentious discovery (including motions to the Court regarding Plaintiff's non-compliance with discovery requests), opposition to Defendants' pre-motion letters, and researching and drafting a motion for summary judgment and reply in further support of this motion.

However, Defendants acknowledge that many of the motions they drafted and research they conducted was in response to meritless or easily disposed of briefs and arguments. See Def. Memo at 25 (". . . opposition to Plaintiff's meritless opposition to Defendants' Pre-Motion Letter, . . . researching and drafting a reply to Plaintiff's meritless opposition to the motion."). This counsels in favor of a reduction to the amount of time that was reasonable to spend on this case. It was abundantly clear after discovery that the Photograph was not registered, and attorneys with the experience of Defense counsel would not need to spend large amounts of time countering the meritless arguments that Plaintiff put forward.[7] Moreover, given the lack of complexity and evidentiary support for the arguments raised by Plaintiff, the Court is unconvinced that a Partner and Senior Associate (i.e., Barry Slotnick and C. Linna Chen) needed to spend over 150 hours on this case. *See, e.g.*, *Tucker v. City of N.Y.*, 704 F. Supp. 2d 347, 355 (S.D.N.Y. 2010) ("[U]sing multiple attorneys in a simple case, which this certainly was, poses the serious potential—fully realized in this instance—for duplication of work or overstaffing."). Accordingly, a 25% across-the-board reduction is necessary to account for "the scope and complexity of the particular litigation." *N.Y. Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1146 (2d Cir. 1983).

### C. Costs

---

[7] For example, Defense counsel billed over $20,000 on the motion for summary judgment. *See* ECF No. 65-15 at 7-8. Given the complete lack of evidentiary support for most of the claims made by Plaintiff in his opposition to Defendants' motion for summary judgment, *see* Opinion & Order at 5-6, the Court believes that Defense counsel expended more time than necessary in litigating what Defendants have characterized as "elementary" problems in Plaintiff's claims, *see* Def. Memo at 1.

Next, the Court turns to the reasonableness of the $4,181.82 in costs that Defendants request. Plaintiff does not object to Defendants' cost calculation. *See* Pl. Memo at 18–20. After careful consideration, the Court determines that Defendants' request is reasonable. The costs requested are primarily associated with the deposition of the Plaintiff ($2,710.00), along with routine postage, legal research, and document production. Many of these costs and fees—including the deposition of Plaintiff—were made necessary by Plaintiff's failure to investigate and appropriately litigate this case, and the costs are "reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998) (quotation omitted).

### D. Costs and Fees for the Instant Motion

Defendants also request an estimated additional $20,000 to $30,000 for costs and fees associated with the instant motion and reply. While courts have the authority to award costs and fees associated with motions for sanctions, *see, e.g., E. Gluck Corp. v. Rothenhaus*, 252 F.R.D. 175, 179 (S.D.N.Y. 2008), the Court declines to do so. The question of whether to impose sanctions and attorneys' fees was not so obvious as to make Plaintiff's motion in opposition frivolous or meritless. Accordingly, Plaintiff's motion in opposition to Defendants' motion for attorneys' fees, costs, and sanctions does not "cross[] the line between zealous advocacy and sanctionable conduct." *Sheet Metal Workers' Nat'l Pension Fund v. AUL Sheet Metal Works, Inc.*, 10-CV-1371, 2012 WL 32237, at *3 (S.D.N.Y. Jan. 5, 2012).

## CONCLUSION

For the reasons set forth above, Defendants are **GRANTED** $100,008.13 in attorneys' fees and costs. Mr. Liebowitz and the Liebowitz Law Firm PLLC are hereby **SANCTIONED** and must collectively pay $10,000 of the attorneys' fee award to Defendants. Accordingly, Plaintiff is liable

for $90,008.13. Finally, Defendants' request for costs and fees associated with the instant motion and reply is **DENIED**.

**SO ORDERED.**

**Dated:** **January 29, 2020**
**New York, New York**

_____
**ANDREW L. CARTER, JR.**
**United States District Judge**